522 So.2d 450 (1988)
Samuel E. JORDAN, Appellant,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, Appellee.
No. BS-453.
District Court of Appeal of Florida, First District.
March 15, 1988.
*451 John L. Woodard, III of Lubet & Woodard, P.A., Orlando, for appellant.
Lisa S. Nelson, Charles F. Tunnicliff and Joseph A. Sole, Dept. of Professional Regulation, Tallahassee, for appellee.
SMITH, Chief Judge.
Appellant, Samuel E. Jordan, seeks review of a final order entered by appellee, Department of Professional Regulation, Board of Nursing, revoking his nursing license without an opportunity for reinstatement. The issues we must resolve are (1) whether the hearing officer's findings of fact are supported by competent substantial evidence; (2) whether Rule 210-10.005(3), Florida Administrative Code, is an invalid exercise of delegated authority; and (3) whether the Board of Nursing erred in not applying Rule 210-10.011, Florida Administrative Code, to appellant's case. We affirm in part and reverse in part.
Jordan is a licensed practical nurse, doing business as "A-1 Emergency Medical Service of Orlando, Inc." Between June 7, 1982 and August 1983, he provided home health care services to Mrs. Grace Sposato who resided with her daughter, Victoria Forni, and two of her grandchildren, Hildy and Richard John.
On January 15, 1986, the Department of Professional Regulation filed an administrative complaint before the Board of Nursing charging Jordan with unprofessional conduct between June 1982 and March 1984. The complaint alleged that while rendering care and treatment to Grace Sposato, Jordan injected himself with Demerol, injected a member of Sposato's family with Demerol without a physician's order, used controlled substances obtained through fraudulent prescriptions, had a history of Demerol dependency, and used his professional relationship to financially exploit members of the Sposato family.
The formal administrative hearing was held on July 11, 1986, and in her order entered on January 7, 1987, the hearing officer found that Jordan engaged in unprofessional conduct by "borrowing" money from the Fornis under false pretenses, by repeatedly taking Demerol while on duty as a nurse, and by administering Demerol to Hildy without a physician's order, but found insufficient evidence to support the charge of obtaining fraudulent prescriptions. The hearing officer further found that Jordan's attitude toward his drug dependency showed a lack of judgment rendering him unable to practice nursing with reasonable skill and safety. Based on these findings of fact, the hearing officer concluded that Jordan had violated sections 464.018(1)(f) (g) and (j), Florida Statutes, and Rule 210-10.05(2)(g), Florida Administrative Code, and recommended that his nursing license be revoked. On February 23, 1987, the Board of Nursing entered its final order adopting the hearing officer's recommended order in its entirety *452 and revoked Jordan's license, but then, without comment, stated that the revocation was not subject to reinstatement.
Two of the issues raised by appellant relate to the sufficiency of the evidence to support the hearing officer's findings of fact which were adopted by the Board of Nursing. A review of the record reveals that there is ample competent substantial evidence to support the findings of fact. The evidence discloses that Jordan injected himself with prescribed Demerol numerous times while in the Forni home caring for Mrs. Sposato and that he injected Hildy Forni with Demerol without a physician's order on several occasions. By deposition, two medical doctors testified that the use of Demerol would impair one's judgment because of its sedative effect and that appellant's attitude about his use of Demerol was inappropriate. The record also reveals that appellant borrowed more than $25,000 from the Forni family under false pretenses. The Department of Professional Regulation presented expert testimony that appellant's actions represented a failure to conform to acceptable and prevailing nursing standards. We therefore affirm the guilt phase of appellant's case.
With respect to the penalty phase, appellant asserts that appellee erred in revoking his license without an opportunity for reinstatement. He contends that Rule 210-10.005(3), Florida Administrative Code, is an invalid exercise of delegated authority. On April 21, 1986, the agency amended Rule 210-10.005(3), formerly 210-10.05(3)(b), to read, "No license revoked by the Board of Nursing after July 26, 1985, shall be subject to reinstatement." [The former rule authorized reinstatement of revoked licenses.] As legislative authority for this rule, the agency cites section 464.018, Florida Statutes (1985).
Section 464.018 is divided into five subsections. Subsection (1) sets out the grounds for disciplinary action; (2) the penalties which may be imposed; (3) the conditions under which a license may not be reinstated or issued to a person previously deemed unqualified; (4) creates a class of persons who are ineligible for reinstatement of their license; and (5) directs the Board to establish guidelines for disposing of disciplinary cases involving specific types of violations.
With respect to a licensed nurse requiring disciplinary action, the Board of Nursing may issue a reprimand, place the nurse on probation, suspend or revoke the nurse's license, or impose a fine of up to $1,000 for each offense. One or more of the foregoing penalties may be imposed, depending on the nature and circumstances of the violations. Section 464.018(2).
Although subsection (3) of section 464.018 is couched in negative terms, by implication it authorizes the Board of Nursing to reinstate a nurse's license when "it is satisfied that such person has complied with all the terms and conditions set forth in the final order and that such person is capable of safely engaging in the practice of nursing." This subsection appears to apply to all nurses whose licenses have been revoked (as well as to license applicants deemed unqualified). Subsection (4) excludes from this general class of nurses those who have been found guilty by the Board on three separate occasions of diverting drugs or narcotics from patients to personal use or sale. They may not have their license reinstated. Upon reading subsections (3) and (4) (which have equal status with subsection (2)), in pari materia, it appears that the Legislature recognized that nurses would be given an opportunity for reinstatement of their licenses. See also Holmes v. Dept. of Prof. Reg., Bd. of Nursing, 504 So.2d 1338 (Fla. 1st DCA 1987) (language in final order prohibiting nurse from petitioning for reinstatement stricken because it conflicted with section 464.018(2) and Rule 210-10.05(3)(b)). This conclusion is buttressed by the legislative purpose of Chapter 464 (Nurse Practice Act), as stated in section 464.002, Florida Statutes (1985):
The sole legislative purpose in enacting this chapter is to ensure that every nurse practicing in this state meet minimum requirements for safe practice. It is the legislative intent that nurses who fall below minimum competency or who otherwise *453 present a danger to the public shall be prohibited from practicing in this state.
See also Northwest Florida Home Health Agency v. Merrill, 469 So.2d 893 (Fla. 1st DCA 1985), rev. den., 479 So.2d 118 (Fla. 1985). In essence, the legislation under consideration is designed to protect the public from nurses who are unqualified to practice their profession for various reasons. This goal is accomplished in part by inflicting disciplinary sanctions on a nurse who violates one or more of the grounds set out in section 464.018. Therefore, when the Board of Nursing revokes the license of an unqualified nurse, it is fulfilling the legislative purpose of protecting the public. However, when the Board denies that same nurse an opportunity for reinstatement of his or her license, it deviates from the legislative goal. It is unskilled, incompetent, and unprofessional nurses, not rehabilitated nurses, who are a threat to the public's safety. We therefore hold that Rule 210-10.005(3), Florida Administrative Code, is not authorized by section 464.018 and is thus an invalid exercise of delegated authority.
Appellee cites three cases for the proposition that a regulatory board may revoke a person's professional license without an opportunity for reinstatement. Wood v. State Dept. of Professional Regulation, Bd. of Dentistry, 490 So.2d 1079 (Fla. 1st DCA 1984); English v. Florida Board of Medical Examiners, 461 So.2d 200 (Fla. 1st DCA 1984); Griffith v. Board of Medical Examiners, 454 So.2d 683 (Fla. 1st DCA 1984). Although there is some language in these cases which tends to support appellee's interpretation, the holding of each case does not. Both English and Griffith involved revocation of licenses during a period when the regulatory board clearly permitted reinstatements, and this court held that the licensees were entitled to have their petitions for reinstatement considered. In Wood, the licensee had not yet petitioned for reinstatement of his revoked license, the final order was silent on the issue, and this court did not decide the reinstatement issue. By contrast, in the present case, the Board has promulgated a rule which applies to appellant's case, and the final order, in compliance with the rule, prohibits reinstatement of appellant's revoked license.
Appellant also argues that the Board of Nursing erred in not applying Rule 210-10.011, Florida Administrative Code, to his case. We disagree. We note, initially, that section 455.2273, Florida Statutes (1986 Supp.), effective June 13, 1986, mandates that each board adopt by rule disciplinary guidelines applicable to each ground for disciplinary action no later than January 1, 1987. On February 5, 1987, the Board of Nursing promulgated Rule 210-10.011 in compliance with the legislative mandate. The rule sets forth a range of penalties applicable to each ground for disciplinary action, provides for enhancement of penalties upon multiple counts of violations, authorizes deviation from the guidelines upon a showing of aggravating or mitigating circumstances, and provides an incomplete list of aggravating and mitigating factors. The rule also provides that when a formal hearing is held, mitigating and aggravating factors must be submitted to the hearing officer.
We find it unnecessary to address the merits of this rule, but only the issue of whether the rule applies to the case before us. The rule became effective February 5, 1987. This was more than six months subsequent to the formal administrative hearing and about one month after the recommended order was entered. The record is silent as to the Board's reason for not meeting the January 1, 1987 deadline, but this fact does not alter the outcome in the present case.
An administrative rule is operative from its effective date, Hulmes v. Div. of Retirement, Dept. of Admin., 418 So.2d 269 (Fla. 1st DCA 1982); Canal Ins. Co. v. Continental Cas. Co., 489 So.2d 136 (Fla. 2d DCA 1986), and, like a statute, Black v. Nesmith, 475 So.2d 963 (Fla. 1st DCA 1985), is presumed to operate prospectively in the absence of express language to the contrary, for when an agency adopts rules and regulations, it functions as a quasi-legislative body, Agrico Chemical Co. v. State Dept. of Environmental Regulation, 365 So.2d 759, 12 ERC 1503 (Fla. 1st DCA 1978), cert. den. 376 So.2d 74 (Fla. 1979).
*454 In the present case, the final order does not mention the challenged rule, and we interpret the agency's silence as indicating its intent not to apply it. We affirm. The rule consists of guidelines which clearly reflect specific administrative policy which had not previously been established, and from a review of the record, we discern no reason why the presumption of prospective application should not apply, McCarthy v. Dept. of Ins. & Treasurer, 479 So.2d 135 (Fla. 2d DCA 1985), especially in light of the penal characteristics of the rule. Bowling v. Department of Ins., 394 So.2d 165 (Fla. 1st DCA 1981).
We feel compelled to note that the absence of language specifically according an administrative rule retroactive effect does not conclusively bar its retroactive application in all cases. Under some circumstances, it would be an abuse of discretion for an agency to refuse to apply a rule retroactively, irrespective of the prospective presumption. E.g., see Upjohn Healthcare Services v. Dept. of Health and Rehabilitative Services, 496 So.2d 147 (Fla. 1st DCA 1986) (error not to apply revised rule adopted during pendency of administrative proceeding to applicant's case) and conversely Potter v. State, Dept. of Admin., 459 So.2d 1170 (Fla. 2d DCA 1984) (error to apply rule establishing attorney's ineligibility prior to date attorney notified of agency's decision to terminate his membership in retirement system). However, we find no circumstances in the case before us which would require the agency to apply the rule retroactively.
In summary, we approve that portion of the final order revoking appellant's nursing license but disapprove that portion prohibiting him from applying for reinstatement of his revoked license.
AFFIRMED in part and REVERSED in part.
WENTWORTH and JOANOS, JJ., concur.